## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **FREEDOMROADS, LLC,**<br>**a limited liability company,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.** |
| **v.** | ) ) | |
| **MIDWEST ADVENTURE**<br>**BUILDS LLC, a limited liability**<br>**company, and WALTER HOLEM,**<br>**an individual,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

---

### COMPLAINT

---

Plaintiff, FreedomRoads, LLC, for its causes of action against Defendants, Midwest Adventure Builds LLC, and Walter Holem, states as follows:

### PARTIES

1.      Plaintiff, FreedomRoads, LLC ("**Plaintiff**" or "**FreedomRoads**"), is a limited liability company organized under the laws of the State of Minnesota, with its principal place of business located at 250 Parkway Drive, Suite 270, Lincolnshire, Illinois 60069.

2.      Upon information and belief, Defendant, Midwest Adventure Builds LLC ("**Midwest**"), is a limited liability company organized under the laws of the State of Florida, with its principal place of business located at 313 Datura Street, Suite 200, West Palm Beach, Florida 33401.  Midwest may be served via its registered agent, Walter Holem, at 313 Datura Street, Suite 200, West Palm Beach, Florida 33401.

3.      Upon information and belief, Defendant, Walter Holem ("**Holem**"), is an individual who is designated as Midwest's manager, owner, and registered agent and may be served individually at 313 Datura Street, Suite 200, West Palm Beach, Florida 33401.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are citizens of different States.

5.      Venue is proper in this Court pursuant to 28 U.S.C § 1391(b)(1) because Midwest and Holem reside in this judicial district.

## FACTUAL ALLEGATIONS

6.      On or about May 3, 2021, FreedomRoads and Midwest entered into a RV Dealer Sales and Service Agreement (the "**Agreement**"). The Agreement is attached hereto as **Exhibit 1**.

7.      Pursuant to Section 2 of the Agreement, Midwest agreed to manufacture, sell, and deliver fifteen (15) units of the Midwest Adventure Builds Modern Buggy Little Buggy line of travel trailers (the "**Little Buggy Product**") "within six (7) [sic] months" of May 3, 2021.

8.      Pursuant to Section 3 of the Agreement, FreedomRoads agreed to pay Midwest $16,900.00 for each unit of the Little Buggy Product.  On May 4, 2021, FreedomRoads wired $253,500.00 to Midwest, which represented the total payment for the fifteen (15) units of the Little Buggy Product.

9.      To date, Midwest has only delivered eight (8) out of the fifteen (15) units of the Little Buggy Product to FreedomRoads.  To date, Midwest has failed and/or refused to deliver the remaining seven (7) units of the Little Buggy Product to FreedomRoads.

10.     Pursuant to Section 2 of the Agreement, Midwest was obligated to deliver all fifteen (15) units of the Little Buggy Product to FreedomRoads by December 3, 2021, at the latest.  Midwest failed to deliver all fifteen (15) units of the Little Buggy Product in accordance with Section 2 of the Agreement.

11.     Section 11 of the Agreement expressly states that Midwest's "failure to make available or deliver the Little Buggy Product in the time and manner provided for in this Agreement" "shall constitute a material default under this Agreement[.]"

12.     Pursuant to Section 4 of the Agreement, the Agreement was terminated no later than December 3, 2021.  Section 4 expressly states that upon termination of the Agreement, "all purchase orders are automatically terminated, including any units that have not been delivered to [FreedomRoads] as of the termination date."

13.     On or about December 8, 2021, FreedomRoads demanded that Midwest return the $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads.  The demand letter sent by FreedomRoads to Midwest is attached hereto as **Exhibit 2**.

14.     On or about January 12, 2022, Holem promised, and personally guaranteed, that he would pay the $118,300.00 outstanding balance to FreedomRoads through a payment schedule consisting of $20,000 per month until the outstanding balance was satisfied (the "**Guarantee**").  The Guarantee sent by Holem to FreedomRoads is attached hereto as **Exhibit 3**.

15.     Holem further stated in the Guarantee that Midwest was expected to begin profiting in April 2022 and that he would be "winning" an unrelated lawsuit signifying that he would be able to pay the $118,300.00 outstanding balance to FreedomRoads.

16.     On May 13, 2022, about four (4) months after the Guarantee was made, Holem represented to FreedomRoads that Midwest was "no longer operating, has no assets, and will longer be in business." A copy of the correspondence from Holem to FreedomRoads is attached hereto as **Exhibit 4**.

17.     To date, and despite the demand by FreedomRoads and Holem's personal guarantee that the balance would be paid, Midwest or Holem have not returned the $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads.

18.     All conditions precedent to the filing of this action have been satisfied, performed, waived or excused.

**COUNT I**
**BREACH OF CONTRACT AGAINST MIDWEST**

19.     FreedomRoads adopts and incorporates paragraphs 1-2, 4-13, and 17-18 of this Complaint as if fully set forth herein.

20.     The Agreement is a valid and enforceable contract between FreedomRoads and Midwest.

21.     Pursuant to the Agreement, FreedomRoads paid $253,500.00 to Midwest for fifteen (15) units of the Little Buggy Product.

22.     Midwest breached the Agreement by failing to deliver all fifteen (15) units of the Little Buggy Product to FreedomRoads. Instead, Midwest delivered only eight (8) units of the Little Buggy Product to FreedomRoads.

23.     To date, and well past the agreed upon deadline for delivery, Midwest has failed to deliver the remaining seven (7) units of the Little Buggy Product to FreedomRoads.

24.     Midwest has not paid back any portion of the $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads.

25.     Midwest has breached the Agreement with FreedomRoads.

26.     FreedomRoads fully performed under the Agreement.

27.     FreedomRoads has suffered damages as a result of Midwest's breach of the Agreement, which include the $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads and business damages, including lost profits arising from Midwest's failure to deliver all fifteen (15) units of the Little Buggy Product to FreedomRoads.

28.     Pursuant to Section 12 of the Agreement, FreedomRoads is entitled to recover all costs and expenses arising out Midwest's breach of the Agreement, including all out-of-pocket costs of collection, court costs, and attorneys' fees and expenses.

**COUNT II**
**CONVERSION AGAINST MIDWEST**

29.     FreedomRoads adopts and incorporates paragraphs 1-2, 4-13, and 17-18 of this Complaint as if fully set forth herein.

30.     By accepting the $253,500.00 from FreedomRoads, which represented the total payment for the fifteen (15) units of the Little Buggy Product, without delivering all fifteen (15) units of the Little Buggy Product to FreedomRoads, Midwest committed an act of dominion wrongfully asserted over money that belonged to FreedomRoads.

31.     In this case, conversion is appropriate because Midewest lied to FreedomRoads when it represented that Midewest would be the party manufacturing the Little Buggy Product, when that was not the case.   Midewest also lied to FreedomRoads regarding its ability to

manufacture the fifteen (15) units of the Little Buggy Product by a certain date when at the time Midwest made the representation, it knew it could not do so.

32.     In this case, money is an appropriate subject of conversion because the money paid by FreedomRoads to Midwest was for the express purpose of purchasing the Little Buggy Product.

33.     Midwest converted $118,300.00 of the $253,500.00 because FreedomRoads paid for fifteen (15) units of the Little Buggy Product but Midwest only delivered seven (7) units of the Little Buggy Product and refused to return the $118,300.00 to FreedomRoads.

34.     Such unauthorized acts have deprived Plaintiff of the $118,300.00 permanently or for an indefinite time.

35.     The deprivation is inconsistent with Plaintiff's ownership interest in its $118,300.00.

36.     As a direct and proximate result of Midwest's conversion of FreedomRoads' funds, FreedomRoads is entitled to recover damages from Midwest in an amount to be determined at trial.

## COUNT III
## MONEY HAD AND RECEIVED AGAINST MIDWEST

37.     FreedomRoads adopts and incorporates paragraphs 1-2, 4-5, 9, 13, and 17-18 of this Complaint as if fully set forth herein

38.     Midwest received possession of $253,500.00 from FreedomRoads, which represented the total payment for the fifteen (15) units of the Little Buggy Product.  However, Midwest delivered only eight (8) units of the Little Buggy Product to FreedomRoads.

39.     Midwest received the $253,500.00 from FreedomRoads due to either a mistake of fact or upon consideration in the agreement which has failed.

40.     Despite demand, Midwest has not paid back any portion of the $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads.

41.     A claim for money had and received lies because Midwest accepted and retained $118,300.00 from FreedomRoads despite failing to deliver all fifteen (15) units of the Little Buggy Product to FreedomRoads.

42.     Midwest should be required to pay back to FreedomRoads the $118,300.00, which represents the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads.

## COUNT IV
## UNJUST ENRICHMENT AGAINST MIDWEST AND HOLEM

43.     FreedomRoads adopts and incorporates paragraphs 1-5, 9, 13, and 17-18 of this Complaint as if fully set forth herein

44.     Midwest and Holem, as owner and manager of Midwest, received possession of $253,500.00 from FreedomRoads, which represented the total payment for the fifteen (15) units of the Little Buggy Product.  However, Midwest delivered only eight (8) units of the Little Buggy Product to FreedomRoads.

45.     FreedomRoads conferred a valuable benefit upon Midwest and Holem by paying $253,500.00 for the fifteen (15) units of the Little Buggy Product.

46.     Midwest and Holem appreciated the benefit by voluntarily accepting the $253,500.00 from FreedomRoads and retaining $118,300.00 despite failing to delivery seven (7) units of the Little Buggy Product.

47.     To date, Midwest or Holem have not paid the $118,300.00 outstanding balance to FreedomRoads nor have they delivered the seven (7) units of the Little Buggy Porduct that Midwest originally failed to deliver to FreedomRoads.

48.     The circumstances are such that it would be inequitable for Midwest and Holem to retain $118,300.00 without delivering the seven (7) units of the Little Buggy Product that Midwest originally failed to deliver to FreedomRoads.

**COUNT V**
**BREACH OF GUARANTEE AGAINST HOLEM**

49.     FreedomRoads adopts and incorporates paragraphs 1-18 of this Complaint as if fully set forth herein.

50.     On or about January 12, 2022, Holem promised in writing that he would pay the $118,300.00 outstanding balance to FreedomRoads through a payment schedule consisting of $20,000 per month until the outstanding balance was satisfied.

51.     Holem's written Guarantee to pay the outstanding balance owed by Midwest is a valid and enforceable contract.

52.     Holem breached the Guarantee by failing to make payment whatsoever to FreedomRoads under the Guarantee.

53.     As a direct and proximate result of Holem's breach of the Guarantee, FreedomRoads has been damaged.

54.     Pursuant to the Guarantee, FreedomRoads is entitled to recover the $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads.

## COUNT VI
## FRAUDULENT INDUCEMENT AGAINST HOLEM

55.     FreedomRoads adopts and incorporates paragraphs 1-18 of this Complaint as if fully set forth herein.

56.     Holem promised in writing that he would pay the $118,300.00 outstanding balance owed by Midwest to FreedomRoads through a payment schedule consisting of $20,000 per month until the outstanding balance was satisfied.

57.     Holem further stated in the Guarantee that Midwest was expected to begin profiting in April 2022 and that Holem was expecting to "win" an unrelated lawsuit to fund the $118,300.00 payment to FreedomRoads for the outstanding balance.

58.     On or about May 13, 2022, four (4) months after the Guarantee was made, Holem represented to FreedomRoads that Midwest was no longer operating, had no assets, and was no longer in business.

59.     To date, Holem has failed to pay the $118,300.00 outstanding balance.

60.     Holem knew or should have known of the falsity of his statement that he would pay the $118,300.00 outstanding balance to FreedomRoads.

61.     Holem intended that his representations would induce FreedomRoads to rely on his statement that he would pay the $118,300.00 outstanding balance and forego pursuing its claims against Midwest and Holem.

62.     Based on the foregoing statements and omissions, Holem fraudulently induced FreedomRoads.

63.     FreedomRoads justifiably relied on Holem's fraudulent representations that he would pay the outstanding balance and refrained from pursuing its claims against Midwest and Holem as a result.

9

64.     As a direct and proximate result of the fraud, FreedomRoads suffered and continues to suffer damages.

## COUNT VII
## PROMISSORY ESTOPPEL AGAINST HOLEM

65.     FreedomRoads adopts and incorporates paragraphs 1, 3-5, 9, 13, and 17-18 of this Complaint as if fully set forth herein.

66.     Holem promised in writing that he would pay the $118,300.00 outstanding balance owed by Midwest to FreedomRoads through a payment schedule consisting of $20,000 per month until the outstanding balance was satisfied.

67.     Holem further stated in the Guarantee that Midwest was expected to begin profiting in April 2022 and that Holem was expecting to "win" an unrelated lawsuit to fund the $118,300.00 payment to FreedomRoads for the outstanding balance.

68.     On or about May 13, 2022, four (4) months after the Guarantee was made, Holem represented to FreedomRoads that Midwest was no longer operating, had no assets, and was no longer in business.

69.     To date, Holem has failed to pay the $118,300.00 outstanding balance.

70.     FreedomRoads reasonably relied on the representations made by Holem regarding the payment of the outstanding balance and suffered a detriment by forbearing prosecution of its claims regarding the $118,300.00 debt.

71.     Under these circumstances, injustice can be avoided only by enforcement of the promise against Holem.

**WHEREFORE, FREEDOMROADS PRAYS FOR RELIEF AS FOLLOWS:**

1.     That service of process issue against Midwest and Holem requiring them to appear and answer this Complaint;

2.      For an award of compensatory, consequential, and incidental damages to FreedomRoads as result of the breach of contract by Midwest, including all expenses and costs associated with this action, including but not limited to court costs and attorneys' fees pursuant to the Agreement;

3.      For an award of damages to FreedomRoads as a result of the conversion of the $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads;

4.      In the alternative, for an award of money had and received against Midwest for $118,300.00;

5.      In the alternative, for an Order finding that Midwest and Holem have been unjustly enriched by their retention of $118,300.00 paid by FreedomRoads, despite Midwest's failure to deliver seven (7) units of the Little Buggy Product to FreedomRoads;

6.      For an award of damages to FreedomRoads as a result of the breach of the Guarantee and written promise made by Holem that he would pay $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads;

7.      For an award of damages to FreedomRoads as a result of Holem fraudulently inducing FreedomRoads to agree to the Guarantee to forbear on pursuing its claims relating to the $118,300.00 debt resulting from the failure to deliver the seven (7) units of the Little Buggy Products or, in the alternative, to pay $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) units of the Little Buggy Product that Midwest failed to deliver to FreedomRoads;

8.      For interest, both pre-judgment and post-judgment; and

9.    For such other further and general relief to which FreedomRoads is entitled.


DATED:  August 23, 2022.


Respectfully Submitted,

**DEAN MEAD**

/s/ *A. Felipe Guerrero*
A. Felipe Guerrero (FL Bar No. 22589)
420 S. Orange Ave, Suite 700
Orlando, FL 32801
Telephone: (407) 428-5165
Fax: (407) 423-1831
FGuerrero@deanmead.com

*Attorney for Plaintiff, FreedomRoads, LLC*

# EXHIBIT "1"

 ***RV DEALER SALES AND SERVICE AGREEMENT***

This RV Dealer Sales and Service Agreement (the "Agreement") is effective as of May 3, 2021 (the "Effective Date"), by and between FreedomRoads, LLC, with its principal place of business at 250 Parkway Drive, Lincolnshire, Illinois 60069 (the "Dealer"), and Midwest Adventure Builds, LLC, with its principal place of business at 313 Datura, Unit 200, West Palm Beach, Florida 33401 (the "Manufacturer" and together with Dealer the "Parties" or individually, a "Party").

### RECITALS:

**WHEREAS**, Manufacturer is a manufacturer of recreational vehicles ("RVs"), including among other products, the Midwest Adventure Builds Modern Buggy Little Buggy line of travel trailers (the "Little Buggy Product");

**WHEREAS**, Dealer is a independent retailer engaged in the sales and service of RVs;

**WHEREAS**, Manufacturer desires to appoint Dealer as its exclusive distributor to resell and service the Little Buggy Product from the Authorized Locations (defined below) and Dealer desires to accept such appointment, subject to the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants, terms and conditions set out in this Agreement, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**1. APPOINTMENT AS AUTHORIZED DEALER.** Manufacturer appoints Dealer as its exclusive distributor of the Little Buggy Product and authorizes Dealer to service (on a non-exclusive basis) Little Buggy Product from Dealer's retail sales dealership locations identified in the attached Appendix "A" or as otherwise set forth in subsequent separate applications signed by authorized representatives of the Parties (the "Authorized Locations"). Manufacturer shall not directly or indirectly sell or distribute the Little Buggy Product to any other Dealer.

**2. DESCRIPTION OF PRODUCTS.** Manufacturer shall manufacture and sell to Dealer at the price contained in Section 3 below one-hundred eighty (180) units of the Little Buggy Product (the "Initial Order"), each of which shall come equipped with the following options: one (1) 175-watt solar panels, two (2) AGM batteries (or one 1000 w portable all in one lithium system), and electric stove. Manufacturer shall begin production immediately following the Effective Date, signed agreement, and wire transfer of 15 units and shall complete production of and deliver to Dealer the Initial Order within six (7) months of the Effective Date.

**3. PAYMENT FOR PRODUCTS.** Dealer agrees to pay Manufacturer SIXTEEN THOUSAND NINE HUNDRED AND NO/100 DOLLARS ($16,900) for each Little Buggy Product as follows:

Dealer shall wire payment to Manufacturer for the purchase of 15 units of Little Buggy Products upon first monthly purchase order. Subsequent payments are provided in a similar fashion but may include more units. Separately, Dealer agrees to pay for transport of units to site location(s).

**4. TERM AND TERMINATION.** The term of this Agreement shall be six (7) months, commencing on the Effective Date (the "Term"), may be extended by the Parties pursuant to Section [14] unless earlier terminated as provided for in this Agreement. Either party may terminate this Agreement with or without cause at any time with thirty (30) days advance written notice to the other party. Upon the expiration or earlier termination of this Agreement, all purchase orders are automatically terminated, including any units that have not been delivered to Dealer as of the termination date; provided, however, Dealer may sell through existing inventory of the Little Buggy Product or Manufacturer shall repurchase existing inventory for the purchase price, or otherwise in accordance with applicable law.

**5. WARRANTY AND SERVICE.** Manufacturer agrees to warrant each Little Buggy Product to retail customers according to the terms of Manufacturer's written warranty, and authorizes Dealer to perform warranty work.  Manufacturer shall reimburse Dealer at Dealer's posted retail labor rate for all warranty repairs and parts authorized by Manufacturer. Manufacturer agrees it shall reimburse Dealer for warranty parts and labor within thirty (30) days of Manufacturer authorizing such warranty repairs.  Manufacturer's obligation to reimburse Dealer for warranty parts and labor shall survive beyond the expiration of the term of this Agreement or any termination of this Agreement by either party, subject to the terms of the Manufacturer's express warranty to retail customer.

**6. COMPLIANCE WITH LAWS.** Manufacturer is in compliance with and shall comply with all applicable laws, regulations and ordinances. Manufacturer has and shall maintain in effect all the licenses, permissions, authorizations, consents and permits that it needs to carry out its obligations under this Agreement.

**7. INDEMNIFICATION.** Upon written notice from Dealer, Manufacturer shall indemnify, defend, and hold harmless Dealer and its parents, subsidiaries, and affiliates and each of their directors, officers, employees, agents, stockholders, successors, and assignees against any and all losses, damages, liabilities, claims, demands, actions, suits, judgements, settlements, interest, awards, penalties, fines, costs, or expenses of any kind (including reasonable attorneys' fees and costs), arising out of or occurring in connection with (a) Manufacturer's acts or omissions as manufacturer of the Little Buggy Product, including negligence, willful misconduct, or breach of this Agreement; (b) failure of any Little Buggy Product, or any standard equipment or material component thereof, to conform to written representations or warranties made by Manufacturer and relied upon by Dealer's customer; (c) any failure by Manufacturer to comply with applicable laws.

**8. INSURANCE.** During the Term, Manufacturer shall, at its own expense, maintain and carry insurance in full force and effect that includes, but is not limited to, commercial general liability (including product liability) with limits no less than $5,000,000 for each occurrence and $10,000,000 in the aggregate with financially sound and reputable insurers and such other insurance policies protecting Manufacturer against any loss, liability, or expense arising out of or related to any personal injury, death, property damage, or otherwise occurring upon or in connection with Manufacturer's business or by reason of Manufacturer's operation of its business, in amounts reasonably and customarily obtained by other Manufacturers in the industry.

**9. WORK PRODUCT AND INTELLECTUAL PROPERTY OWNERSHIP.** Any copyrightable works, ideas, discoveries, inventions, patents, products, or other information (collectively the "Work Product") developed in whole or in part by Manufacturer in connection with the Little Buggy Product will be the exclusive property of Manufacturer. Upon request, Dealer will execute all documents necessary to confirm or perfect the exclusive ownership of Manufacturer to the Work Product. During the Term, Manufacturer grants to Dealer the nonexclusive right to use Manufacturer's marks and name, and Dealer may represent that is Manufacturer's authorized dealer.

**10. CONFIDENTIALITY.** During the Term, either Party may disclose or make available to the other Party information about its business affairs, products, confidential intellectual property, trade secrets, third-party confidential information, and other sensitive or proprietary information (collectively, "Confidential Information"). Confidential Information shall not include information that, at the time of disclosure is: (a) in the public domain; (b) known to the receiving party at the time of disclosure; or (c) rightfully obtained by receiving party on a non-confidential basis from a third party. The receiving party shall not disclose any such Confidential Information to any person or entity, except to the receiving party's employees who have a need to know the Confidential Information for the receiving party to perform its obligations hereunder. On the expiration or termination of the Agreement, the receiving party shall promptly return to the disclosing party all copies, whether in written, electronic or other form or media, of the disclosing party's Confidential Information, or destroy all such copies and certify in writing to the disclosing party that such Confidential Information has been destroyed.

**11. DEFAULT.** The occurrence of any of the following shall constitute a material default under this Agreement: (a) Dealer's failure to make a required payment as provided in Section 3; (b) the insolvency or bankruptcy of either party; (c) the subjection of any of either party's property to any levy, seizure, general assignment for the benefit of creditors, application or sale for or by any creditor or government agency; (d) Manufacturer's failure to make available or deliver the Little Buggy Product in the time and manner provided for in this Agreement; and, (e) Manufacturer's failure to reimburse Dealer for warranty parts or labor as provided in Section 5.

**12. ATTORNEYS' FEES AND COLLECTION COSTS.** If there is dispute relating to any provisions in this Agreement, the prevailing party is entitled to, and the non-prevailing party shall pay, the costs and expenses incurred by the prevailing party in the dispute, including but not limited to all out-of-pocket costs of collection, court costs, and reasonable attorney fees and expenses.

**13. FORCE MAJEURE.** If performance of this Agreement or any obligation under this Agreement is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party unable to carry out its obligations gives the other party prompt written notice of such event, then the obligations of the party invoking this provision shall be suspended to the extent necessary by such event. The term Force Majeure shall include, without limitation, acts of God, fire, explosion, vandalism, storm or other similar occurrence, orders or acts of military or civil authority, or by national emergencies, insurrections, riots, or wars, or strikes, lock-outs, work stoppages or other labor disputes, or supplier failures. The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased. An act or omission shall be deemed within the reasonable control of a party if committed, omitted, or caused by such party, or its employees, officers, agents, or affiliates.

**14. DISPUTE RESOLUTION.** The Parties will attempt to resolve any dispute arising out of or relating to this Agreement through good faith negotiations between the Parties. If the matter is not resolved by negotiation within thirty (30) days, the Parties will resolve the dispute using the following Alternative Dispute Resolution (ADR) procedure: Any controversies or disputes arising out of or relating to this Agreement will be resolved by binding arbitration under the rules of the American Arbitration Association. The arbitrator's award will be final, and judgment may be entered upon it by any court having proper jurisdiction.

**15. ENTIRE AGREEMENT; SURVIVAL.** This Agreement contains the entire agreement of the Parties, and there are no other promises or conditions in any other agreement whether oral or written concerning the subject matter of this Agreement. This Agreement supersedes any prior written or oral agreements between the Parties. Subject to the limitations and other provisions of this Agreement Section 7 - Indemnification, Section 8 - Insurance, Section 10 - Confidentiality and any other provision that, in order to give proper effect to its intent should survive such expiration or termination will survive the expiration or earlier termination of this Agreement.

**16. SEVERABILITY.** If any provision of this Agreement will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**17. AMENDMENT.** This Agreement may be modified or amended in writing by mutual agreement between the Parties, if the writing is signed by the party obligated under the amendment.

**18. GOVERNING LAW.** This Agreement shall be construed in accordance with the laws of the State of Indiana without regard to conflict of laws provisions thereof.

**19. NOTICE.** Any notice or communication required or permitted under this Agreement shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the address set forth in the opening paragraph or to such other address as one party may have furnished to the other in writing.

**20. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**21. CONSTRUCTION AND INTERPRETATION.** The rule requiring construction or interpretation against the drafter is waived. The document shall be deemed as if it were drafted by both Parties in a mutual effort.

**22. ASSIGNMENT.** Neither party may assign or transfer this Agreement without the prior written consent of the non-assigning party, which shall not be unreasonably withheld or delayed.

**23. RELATIONSHIP OF THE PARTIES.** Dealer is an independent contractor. Dealer is not the agent, employee, or legal representative of Manufacturer. Nothing contained herein shall be construed to create a partnership, joint venture, or agency relationship between the Parties.

This RV DEALER SALES AND SERVICE AGREEMENT is executed and agreed to by:

**MIDWEST ADVENTURE BUILDS, LLC:**

By: Walter Holem Its: owner

**FREEDOMROADS, LLC:**

By: Brent Moody Its:  President

# EXHIBIT "2"



December 8, 2021

[via e-mail and certified mail – return receipt requested]

Walter Holem
Midwest Adventure Builds, LLC
313 Datura, Unit 200
West Palm Beach, Florida 33401

Re: Default of RV Dealer Sales and Service Agreement

Dear Mr. Holem,

I write on behalf of FreedomRoads, LLC ("**FreedomRoads**") to provide you and Midwest Adventure Builds, LLC ("**Midwest Adventure Builds**") notice that, pursuant to Section 11(d) of that certain May 3, 2021 RV Dealer Sales and Service Agreement entered into between FreedomRoads and Midwest Adventure Builds (the "**Agreement**"), Midwest Adventure Builds is in default of the Agreement.

Specifically, pursuant to the Agreement, Midwest Adventure Builds agreed to build and deliver fifteen (15) Midwest Adventure Builds Modern Buggy Little Buggy line of travel trailers ("**Little Buggy Product**") to FreedomRoads at a cost of $16,900.00 per Little Buggy Product. *See* Agreement at Sections 2–3. The Agreement required Midwest Adventure Builds to build and deliver these fifteen (15) Little Buggy Product to FreedomRoads "within six (7) months of the Effective Date (May 3, 2021)." *Id*. In exchange, on May 4, 2021, FreedomRoads wired $253,500.00 to Midwest Adventure Builds as an advance payment for the fifteen (15) Little Buggy Product. To date, Midwest Adventure Builds has only delivered eight (8) out of the fifteen (15) Little Buggy Product ordered by FreedomRoads (purchase orders 947400 through 947407). However, the deadline to deliver all fifteen (15) units was six (6) or seven (7) months from the Effective Date of the Agreement which was either November 3, 2021 or December 3, 2021. *Id*. In either case, Midwest Adventure Builds failed to meet its obligations under the Agreement to deliver all fifteen (15) Little Buggy Product within six (6) *or* seven (7) months of the Effective Date of the Agreement and such failure puts Midwest Adventure Builds in Default under the Agreement. *See* Agreement at Section 11.

Additionally, upon termination of the Agreement, "all purchase orders are automatically terminated, including any units that have not been delivered to [FreedomRoads] as of the termination date". *See* Agreement at Section 4. As such, in addition to the Agreement, FreedomRoads purchase orders 947399 through 947393, representing the seven (7) undelivered Little Buggy Product, are terminated.



Based on Midwest Adventure Builds's default under the Agreement as set forth above, FreedomRoads hereby demands payment and return of $118,300.00 representing the outstanding balance paid by FreedomRoads for the seven (7) undelivered Little Buggy Product. FreedomRoads demands this payment within fourteen (14) days of this letter.

FreedomRoads expressly reserves all rights under the terms of the Agreement.

Thank you for your attention to this matter. We look forward to hearing from you soon.

Sincerely,

Brandon DeBerry
Associate General Counsel

CC:

      Christopher Johnson (via email)

# EXHIBIT "3"

**Mailroom**

| | |
|---|---|
| From: | Wally Holem <wally@midwestadventurebuilds.com> |
| Sent: | Wednesday, January 12, 2022 12:05 PM |
| To: | Christopher Johnson |
| Cc: | Brandon DeBerry |
| Subject: | Re: Demand Letter 2021.12.8.pdf |
| Attachments: | Demand Letter 2021.12.8.pdf |

Hi guys,

Sorry about my manufacturing and legal issues with DeVon Miller/RD trailers. I will be winning a lawsuit against them for fraud, theft, and malpractice. They will be out of business soon because of what they've done. Hopefully you aren't doing any business with them that draws you into it. The current funding they are using is stolen money. I would hate for that to trickle down to you. Just letting you know as a courtesy.

In regards to the demand letter, I totally respect your position . I will pay you the remainder balance. However, I'm in a rebuilding phase so I  will need to set up a payment schedule with you.

It looks as though my company will begin profiting again in April. I plan to repay you $20,000 per month.

Best regards,




Sent from my iPhone

> On Dec 8, 2021, at 2:10 PM, Christopher Johnson <christopher.johnson@campingworld.com> wrote:
>
>
> Wally,
> Please find the attached letter
>
>
>
> Sent from my iPhone
> .

1

# EXHIBIT "4"

**Mailroom**

| | |
|---|---|
| **From:** | Wally Holem <wally@midwestadventurebuilds.com> |
| **Sent:** | Friday, May 13, 2022 10:25 AM |
| **To:** | Christopher Johnson |
| **Cc:** | Brandon DeBerry |
| **Subject:** | Re: [EXTERNAL] Demand Letter 2021.12.8.pdf |

Hey Guys,

Modern Buggy Trailers LLC/Midwest Adventure Builds LLC is no longer operating, has no assets, and will longer be in business.

Wally